IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Stephene Moore, on behalf of her minor child, P.M.,<br><br>    *Plaintiff*,<br><br>v.<br><br>Officer Bradley Lauer, *et al.*,<br><br>    *Defendants*. | Case No. 3:22-cv-50354<br><br>Magistrate Judge Lisa A. Jensen |

**MEMORANDUM OPINION AND ORDER**

For the reasons stated below, Plaintiff's motion to compel the statements of eyewitnesses and investigative reports [93] is granted. Defendant Board of Education of Rockford Public School District 205 shall produce the documents on or before February 1, 2024.

**I. Background**

On October 12, 2022, Plaintiff Stephene Moore filed this suit on behalf of her minor son, P.M. Dkt. 1. In her second amended complaint, Plaintiff alleges that on September 21, 2021, when P.M. was a fourteen-year-old freshman at Auburn High School in Rockford, Illinois, school officials violently restrained P.M. by blocking his movements, grabbing P.M., and ultimately throwing P.M. to the floor. Dkt. 75. P.M. was hospitalized for two days and suffered a traumatic brain injury, causing lifelong physical and mental repercussions. *Id.*

Plaintiff is suing the City of Rockford and School Resource Officer Bradley Lauer of the Rockford Police Department, along with the following defendants from the school district, the Board of Education of Rockford Public School District 205 ("School District"), Assistant Principal

1

Scott Dimke, Assistant Principal Amber Lee-Black, Teacher Jessica Basford Palos,[1] President of the Board Jude Makulec, Superintendent Ehren Jarrett, General Counsel of the School District Lori Hoadley, and Director of Welcome Center Relations for the School District Kristina Reuber ("School District Defendants"). Dkt. 75. Plaintiff brings numerous claims under 42 U.S.C. § 1983, alleging violations of P.M.'s constitutional rights, including excessive force against Officer Lauer. Dkts. 75, 132–33. Plaintiff also brings state law claims of assault, battery, intentional infliction of emotional distress, and indemnification. *Id.* On January 23, 2024, the district judge granted the School District Defendants' motion to dismiss, which dismissed Defendants Lee-Black, Basford Palos, Makulec, Jarrett, Hoadley, and Reuber. Dkt. 133. Plaintiff was given until February 19, 2024 to file an amended complaint. *Id.*

Plaintiff brought the instant motion to compel, seeking the School District Defendants compliance with numerous discovery requests. Dkt. 93. This Court has ruled on the majority of the issues raised in Plaintiff's motion but reserved ruling on Plaintiff's request for eyewitness statements and investigative reports relating to the September 21, 2021 incident at issue.[2] Dkts. 109, 124. The School District produced a privilege log, which identifies these statements, reports, and related emails as being withheld based on work-product protection. Dkt. 93-11 at 1–6. The School District also filed a memorandum in support of their claims of work product. Dkt. 113. Plaintiff filed a reply. Dkt. 120.

---

[1] Plaintiff named "Jessica Badford" in the second amended complaint. Dkt. 75. Defendant states she was misnamed and that her proper name is Jessica Basford Palos. Dkt. 85 at 1 n.1. Plaintiff shall correct Defendant Jessica Basford Palos' name if she is named in any amended complaint. *See* Dkt. 133.

[2] This Court has also entered and continued Plaintiff's motion with respect to request for production 50(b) pending the School District's production for request 49 and certain emails pending the parties' meet and confer. Dkt. 124.

Pursuant to this Court's order, the School District provided the Court with the following documents that it withheld for *in camera* review: text messages from office professional Ashley Milliard and teacher Mark Peterson, two written statements from school nurse Amy O'Reilly, a written statement from Principal Jenny Keffer, two investigative reports provided to General Counsel Hoadley, and emails dated September 22, September 30, and October 1, 2021 relating to the written statements of Nurse O'Reilly and Principal Keffer. Dkt. 121. This Court has reviewed the documents *in camera* and will now evaluate the School District's withholding of these documents based on work-product protection.

## II. Discussion

Federal Rule of Civil Procedure 26(b)(3) governs the work-product doctrine and provides that "[o]rdinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative." Fed. R. Civ. P. 26(b)(3)(A). "The work-product doctrine exists, in pertinent part, to protect an attorney's thought processes and mental impressions against disclosure." *In re Local TV Advert. Antitrust Litig.*, No. 18-06785, 2023 WL 5956851, at *14 (N.D. Ill. July 28, 2023) (internal quotation marks and citation omitted). However, for the work-product doctrine to apply, "there must be a showing that the document was prepared ... *because* of the prospect of litigation." *Id.* (emphasis in original) (internal quotation marks and citation omitted). The School District, as the party asserting protection, bears the burden of showing that the work-product doctrine applies to each document. *See id.* at *15.

At issue are two investigative reports dated October 26, 2021[3] that were prepared by Investigator James McDougall and addressed to General Counsel Hoadley. These investigative reports also contain the statements that Plaintiff seeks to compel,[4] namely Nurse O'Reilly's statement dated September 22, 2021[5] and Principal Keffer's statement dated September 30, 2021.[6] Both of these written statements were provided to in-house counsel for the School District. The School District has withheld the investigative reports and the two witness statements, arguing that

---

[3] This Court's *in camera* review of the investigative reports reveals that both reports are dated October 26, 2021. The School District's privilege log states that the draft report is dated October 26, 2021 and the final report is dated February 16, 2022. Dkt. 93-11 at 1. The School District's cover letter provided with the documents for *in camera* review similarly identifies the same February 16, 2022 date for the final investigative report. However, the School District has not provided an affidavit or any other evidence confirming that the final report was dated February 16, 2022.

[4] The reports also contain a picture of a September 21, 2021 text message from Ashley Millard and a picture of a September 21, 2021 text message from Mark Peterson, which Plaintiff seeks to compel. The School District's privilege log states that the text messages were withheld based on work-product protection. Dkt. 93-11 at 3. However, the School District does not address the text messages in its brief other than to state that it is not withholding "any written statements" for Peterson and Millard. Dkt. 113 at 3. Plaintiff's request for production #38 sought written statements and notes from eyewitnesses to the incident, but the School District does not address Plaintiff's request for text messages that relate in any way to the incident in request for production #31. Dkt. 93-9 at 11, 13. More importantly, the School District has not met its burden to show that it properly withheld text messages sent from two eyewitnesses to Principal Keffer based on work-product protection. *See Hankins v. Alpha Kappa Alpha Sorority, Inc.*, 619 F. Supp. 3d 828, 834 (N.D. Ill. 2021) ("[T]he party asserting the work product doctrine bears the burden of establishing that the doctrine applies to each document as to which it is asserted."). Therefore, the School District shall produce these text messages to Plaintiff if it has not already.

[5] The School District also withheld Nurse O'Reilly's original statement dated September 22, 2021, and a screenshot of Nurse O'Reilly's report. Dkt. 93-11 at 2-3. Plaintiff independently obtained Nurse O'Reilly's first and second written statements, along with notes she took regarding the incident. Although Plaintiff has not received Nurse O'Reilly's report, the School District admits that the content of the nurse's report "mirrors the first written statement." Dkt. 113 at 3. The School District states that "although Plaintiff independently obtained the statement of Ms. O'Reilly, [ ] that alone does not define the work-product status of the record." Dkt. 113 at 3. Nevertheless, it abandons the assertion of work-product protection "for this single record." Dkt. 113 at 4. Accordingly, the School District now only claims work-product protection for Nurse O'Reilly's second statement, not her first statement, the screenshot of the nurse's report, or her notes.

[6] Although the School District's privilege log identifies Principal Keffer's statement as being dated September 22, 2021, Dkt. 93-11 at 2, this Court's *in camera* review of that statement indicates that the statement was written on September 30, 2021.

4

they are protected work product because they were prepared at counsel's direction in anticipation of litigation.

Plaintiff disagrees, arguing that the School District cannot claim work-product protection because the statements and reports were not prepared by an attorney. Plaintiff points out that the investigative reports were prepared by an investigator and the statements were prepared by the witnesses themselves. The Supreme Court has observed that the work-product doctrine protects material prepared by agents for the attorney as well as material prepared by the attorney directly. *See United States v. Nobles*, 422 U.S. 225, 238-39 (1975). As the School District points out, "whether a document is protected depends on the motivation behind its preparation, rather than on the person who prepares it." *Caremark, Inc. v. Affiliated Computer Services, Inc.*, 195 F.R.D. 610, 615 (N.D. Ill. 2000); Dkt. 113 at 4. "Work-product protection applies to attorney-led investigations when the documents at issue can fairly be said to have been prepared or obtained because of the prospect of litigation." Dkt. 113 at 5 (citing *Sandra T.E. v. S. Berwyn Sch. Dist. 100*, 600 F.3d 612, 622 (7th Cir. 2010) (internal quotation marks and citation omitted)).

Here, the School District asserts that because the investigation and the resulting reports and statements from Nurse O'Reilly and Principal Keffer were prepared at the direction of in-house counsel for the School District "to address specific inquiries and concerns with an eye toward litigation," they are protected work product. Dkt. 113 at 6. However, as Plaintiff points out, the School District provides no evidence in support of its assertion, by affidavit or otherwise, that the investigation or the witness statements were prepared at the direction of counsel, let alone because of the prospect of litigation. *See Caremark, Inc.*, 195 F.R.D. at 616 (observing that sending documents to or through an attorney does not screen a document that is not otherwise work product). Defense counsel's representation alone as to the motivation behind requesting the

5

documents is insufficient to support its claim of work product. *See Rao v. Bd. of Trustees of the Univ. of Illinois*, No. 14-CV-0066, 2016 WL 6124436, at *6 n.8 (N.D. Ill. Oct. 20, 2016) (finding the defendants did not meet their burden of proving work-product protection over attorney investigative files where they did not produce a single affidavit or engagement letter, noting that it was not the court's responsibility to solicit a supporting affidavit).

Nevertheless, even if the reports and statements were prepared at counsel's direction, not all documents resulting from an attorney-led investigation are protected work product. "Not all documents created or produced by a company can be categorized as protected by work product simply because a company's internal investigation is co-existent with a present or anticipated lawsuit that is the same subject matter of the litigation. Not only must the primary motivating purpose behind the creation of the document or investigative report ... be to aid in ... litigation, in order to be deemed protected, the document must also be of a legal nature and primarily concerned with legal assistance; technical information is otherwise discoverable." *Caremark, Inc.*, 195 F.R.D. at 614–15 (internal quotation marks and citations omitted). "There is a distinction between precautionary documents developed in the ordinary course of business for the remote prospect of litigation and documents prepared because some articulable claim, *likely* to lead to litigation, [has] arisen." *Sandra T.E.*, 600 F.3d at 622 (internal quotation marks and citation omitted) (emphasis in original). "Materials prepared in the ordinary course of business—even if prepared at a time when litigation was reasonably anticipated or that may have the incidental effect of being helpful in litigation—are not protected under the work product doctrine." *Hankins v. Alpha Kappa Alpha Sorority, Inc.*, 619 F. Supp. 3d 828, 837 (N.D. Ill. 2021) (internal quotation marks and citation omitted). In other words, "[i]f a document would have been created regardless of whether litigation was anticipated or not, it is not work product." *Caremark, Inc.*, 195 F.R.D. at 616.

Plaintiff argues that the reports and statements are not protected because they were prepared in the School District's ordinary course of business in conducting a routine investigation following physical restraint of a student and would have been prepared regardless of any litigation. This Court agrees that the School District has not shown that the investigative reports and Nurse O'Reilly and Principal Keffer's statements were anything other than documents prepared in the ordinary course of business.

This Court's review of the investigative reports indicates that they were not for purposes of aiding counsel in preparing for litigation, but instead appear to be a routine investigation following a school employee's use of physical restraint against a student. *See, e.g.*, *Hankins*, 619 F. Supp. 3d at 839 (finding work-product protection did not apply to an investigative report conducted following a sorority hazing incident where the report revealed it was created to identify and address the alleged violations of the sorority's anti-hazing policy and did not reflect a primary motivating purpose of aiding in litigation). As referenced in the investigative reports, the School District's policy on the use of physical restraint requires an investigation of "any incident that results in an injury that the affected student (or the responsible parent or guardian), staff member, or other individual identifies as serious." Rockford Public Schools, Governing Policies, Students, 7.191 *Use of Isolated Time out and Physical Restraint*. The policy states that the building principal shall investigate and evaluate the incident and determine alternative strategies, and that the investigation is both for documentation and reporting purposes. There is no mention of litigation purposes, either in the policy or in the investigative reports. Instead, the subject of the investigation was "Scott Dimke-Assistant Principal at Auburn High School." The reports indicate that the School District was investigating the factual basis behind the incident and reveal the investigator's findings regarding the sequence of events that took place on September 21, 2021, the interviews

7

conducted, and any statements provided by the interviewed witnesses. The only conclusion in the report was the investigator's determination as to whether the School District's policy on physical restraint had been violated.

Despite the investigative reports clearly referencing the policy on the use of physical restraint as the motivating purpose for the investigation, the School District does not reference or otherwise explain its investigation pursuant to this policy. Nevertheless, the School District admits that its investigation of the incident had a dual purpose, namely for both business and litigation purposes. The School District claims that Nurse O'Reilly's statement was prepared both "(1) to document her response to the incident as school nurse, and (2) to aid Deputy General Counsel Goldsmith's investigation of the incident in anticipation of possible litigation regarding P.M." Dkt. 113 at 7. As to the investigation generally, the School District claims that "the September 21, 2021 incident was initially handled as a student behavioral incident by the District; however, it quickly became evident that this situation was not only a student behavioral incident, but also a potential legal claim based on the nature of the interactions with P.M. and P.M.'s potential injuries." Dkt. 113 at 6 (emphasis in original).

Accordingly, the School District seems to argue that once litigation was anticipated, the reports and statements were prepared to aid counsel in possible litigation. Even assuming there was a dual purpose for the investigation and that at some point the reports and statements were prepared in anticipation of litigation, the School District does not indicate the turning point of its investigation from one prepared for a business purpose to one prepared in anticipation of litigation. Again, the School District provides no affidavits to support the claim that the reports and statements were requested for any reason other than pursuant to its policy on investigating incidents of physical restraint. Such unsupported claims do not turn an investigation already

8

underway pursuant to school policy into one prepared because of litigation. The School District offers no evidence to indicate that the investigator was informed that the investigation was being prepared with an eye toward litigation or that the investigator's reports would not have been created in essentially similar form irrespective of the litigation.

The reports themselves also do not indicate that the focus of the investigation changed after the initial investigation was underway. The reports indicate that the primary motivation of the investigation was to determine whether its employee violated the School District's policy. Dkt. 113 at 9; *see Caremark*, 195 F.R.D. at 614 (finding "investigative reports developed in the ordinary course of business" are not work product). Neither the reports nor the statements "reflect a primary motivating purpose of aiding in litigation." *Hankins*, 619 F. Supp. 3d at 840 (internal quotation marks and citation omitted). The instant reports and statements contain "no assessment, or even mention, of legal exposure, legal strategy, or litigation" and "contains no legal advice and is not of a legal nature." *Hankins*, 619 F. Supp. 3d at 839. The School District makes no showing that the verbatim written statements prepared by Principal Keffer and Nurse O'Reilly and the investigator's summary of witness interviews are protected work product. *See The Manitowoc Co., Inc. v. Kachmer*, No. 14-CV-9271, 2016 WL 2644857, at *4 (N.D. Ill. May 10, 2016) ("What counsel are entitled to protect is their work and their thoughts and their analysis of the case, not the knowledge possessed by third parties.") (citation omitted). "While the information obtained from the interviews may have had the incidental effect of being helpful in litigation, that does not convert the report, which was concerned with violations of [the defendant's] policies, into one concerned with litigation, as is required for work-product protection to apply." *Id.* Therefore, the School District has not established that its investigation, and the resulting reports and written

9

statements from Nurse O'Reilly and Principal Keffer, were prepared because of the prospect of litigation.

The School District has also not shown that the reports and statements were prepared at a time when litigation was reasonably anticipated. "It is axiomatic that in order to invoke the protection of the work product privilege, one must show that the materials sought to be protected were prepared 'in anticipation of litigation ....'" *Binks Mfg. Co. v. Nat'l Presto Indus., Inc.*, 709 F.2d 1109, 1118 (7th Cir. 1983) (quoting Fed. R. Civ. P. 26(b)(3)). "The Seventh Circuit has explained that the test for anticipation of litigation is whether, in light of the nature of the document and the factual situation in the particular case, the document can be fairly said to have been prepared or obtained because of the prospect of litigation." *Hankins*, 619 F. Supp. 3d at 837 (internal quotation marks and citation omitted).

The School District claims that the "prospect of litigation was not remote" due to the nature of P.M.'s potential injuries shortly after the incident. Dkt. 113 at 6. It also argues that "it does not follow that the investigation was unrelated to the threat of litigation against the School District Defendants, beginning with the preservation demand," Dkt. 113 at 8–9, referring to a September 29, 2021, letter Plaintiff's previous attorney sent the School District requesting the preservation of evidence. Dkt. 113-1.[7]

It is understandable that the severity of P.M.'s injuries combined with a letter to preserve evidence may have raised concerns about the possibility of future litigation. That the School District "could be the target of a lawsuit, however, falls short of an identifiable resolve to litigate."

---

[7] The School District also received a preservation demand letter from Plaintiff's current counsel on October 21, 2021, stating that Plaintiff had retained counsel to investigate the incident and requested the preservation of evidence. Dkt. 93-14. However, the School District argues that "the prospect of litigation occurred well before counsel's letter dated October 21, 2021." Dkt. 113 at 6.

*Hankins*, 619 F. Supp. 3d at 838 (internal quotation marks and citations omitted). The investigator provided his report on October 26, 2021, nearly a year before this litigation commenced on October 12, 2022.

Although Plaintiff's former counsel sent a letter to the School District to preserve evidence, it is just that, a preservation letter. The letter states only that Plaintiff retained counsel and that counsel requested the preservation of evidence. Dkt. 113-1. Counsel also specifically inquired about a disciplinary hearing against P.M. and requested notification regarding any discipline proceedings. It does not indicate that P.M.'s parent intended to litigate at that time or even that the School District was the target of any potential litigation. Instead, the letter focused on disciplinary proceedings against P.M. The School District offers no explanation for why it believed this preservation letter meant that litigation would result. *See Long v. Anderson Univ.*, 204 F.R.D. 129, 137 (S.D. Ind. 2001) ("[T]he fact that litigation ensues or a party retains an attorney, initiates an investigation, or engages in negotiations over a claim is not determinative as to whether litigation is anticipated.") (citing *Harper v. Auto–Owners Ins. Co.*, 138 F.R.D. 655, 660 (S.D. Ind. 1991)) (collected cases). "[A] remote prospect of future litigation is not sufficient to invoke the work product doctrine." *In re Special September 1978 Grand Jury (II)*, 640 F.2d 49, 65 (7th Cir. 1980).

Even if the September 29, 2021, letter indicated an identifiable resolve to litigate, the investigation began, witnesses were interviewed, and Nurse O'Reilly provided her statement before the School District received this letter.[8] Even for Principal Keffer's statement, which was

---

[8] Even in the School District's attempt to distinguish the five witness statements it did not withhold based on work product, it appears to be making an arbitrary distinction as to the timing of the written statements. The School District produced witness statements from Amber Bates, Amber Lee-Black, Scott Dimke, Jessica Basford Palos, and Paige Campbell. Dkt. 107. It argues that because these five statements "were prepared on September 21, 2021, contemporaneous with the incident, at Principal Keffer's direction, and in connection with the initial handing of the incident involving P.M. as a student behavioral incident," they are not protected work product. Dkt. 113 at 7. However, this Court's review of the statements from Bates

11

provided the day after the September 29, 2021 letter, the School District provides no evidence that her statement was requested in response to a threat of imminent litigation and not pursuant to the School District's policy requiring an investigation into incidents of physical restraint. *See Long v. Anderson University*, 204 F.R.D. 129 (S.D. Ind. 2001) (finding work product did not protect a university's internal investigation of a former student's complaints despite counsel's threatened litigation because the investigation took place because of the university conducting its ordinary business, rather than for purposes of litigation). Under these circumstances, the School District has not met its burden to show that the two investigative reports and Nurse O'Reilly and Principal Keffer's statements are protected work product.

As part of this Court's *in camera* review, the School District also provided emails it withheld dated September 22, September 30, and October 1, 2021 relating to the written statements of Nurse O'Reilly and Principal Keffer. Although the School District's privilege log states that these emails were withheld based on work-product protection, Dkt. 93-11 at 4, 6, it does not address these emails in its brief or otherwise show that the emails are protected work product. *See Hankins*, 619 F. Supp. 3d at 834 ("[T]he party asserting the work product doctrine bears the burden of establishing that the doctrine applies to each document as to which it is asserted."). The School District has also forfeited any assertion of attorney-client privilege by failing to raise this privilege in its privilege log or in its brief. *See, e.g., Int'l Ins. Co. v. Certain Underwriters at Lloyd's London*, No. 88 C 9838, 1992 WL 314199 (N.D. Ill. Oct. 26, 1992) (upholding magistrate judge's finding of waiver of attorney-client privilege due to party's failure to claim privilege in its privilege log). As such, the School District has not met its burden to show that the emails relating

---

and Campbell indicates that they were provided to Principal Keffer on September 22, 2021. Dkt. 107. This is the same date Nurse O'Reilly provided both of her statements. Yet, the School District has withheld Nurse O'Reilly's statements based on work-product protection.

12

to the statements of Principal Keffer and Nurse O'Reilly were properly withheld. Therefore, these emails, along with the investigative reports and statements shall be produced to Plaintiff.

### III. Conclusion

For the reasons stated above, Plaintiff's motion to compel the statements of eyewitnesses and investigative reports [93] is granted.

Date: January 24, 2024        By:   *Lisa A. J—*
                                    Lisa A. Jensen
                                    United States Magistrate Judge